UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT L. SCHWEIKART,
    PLAINTIFF

VS.

COMMISSIONER OF SOCIAL
SECURITY,
    DEFENDANT

CASE NO. 1:09CV013
(WEBER, J.)
(HOGAN, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff filed his application for Social Security Disability and Supplemental Security Income in February, 2005. He alleged an onset date of September 24, 2003. Plaintiff's application was denied, both initially and upon reconsideration. Plaintiff then requested and obtained two hearing before an Administrative Law Judge (ALJ) at Cincinnati, Ohio in August and November, 2007. Plaintiff, who was represented by counsel, testified at the first hearing and at the later supplemental hearing, both the medical expert and vocational expert testified. Following an unfavorable decision in November, 2008, Plaintiff processed an appeal to the Appeals Council, which refused review in November, 2008. Plaintiff timely filed his Complaint with this Court in January, 2009.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ made three errors prejudicial to his case. Plaintiff first argues that the ALJ erred by giving undue weight to the opinion of Arthur Lorber, M.D., the medical expert, at the expense of treating physician, Matthew McLaughlin, M.D. The second error asserted is that the ALJ failed to properly evaluate Plaintiff's credibility and reports of pain. Finally, Plaintiff asserts that the ALJ erred in relying upon responses to an improperly formulated hypothetical question.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that he was injured on the job while working as a pallet builder for Coca-Cola Enterprises. He was injured while lifting a case of 2-litre bottles from the floor. Plaintiff testified that he was receiving a total of $830 every two weeks after having previously filed a Workers Compensation claim for temporary total disability. Plaintiff testified that he underwent surgery in 2004 and was presently treating with pain medications, such as Oxycodone and Oxycontin. After physical therapy was approved, Plaintiff completed 15 physical therapy visits and attempted rehabilitation through the Rehabilitation Commission, but was denied because he could not obtain a release from Dr. McLaughlin, his primary care physician.

Plaintiff testified that Dr. McLaughlin referred him to Michael Rohmiller, M.D. a spinal specialist at Cincinnati Spine Institute. Plaintiff felt that the physical therapy sessions made his pain worse. He occasionally takes muscle relaxers and uses the Lidoderm patch once or twice per week for pain relief. He testified that he has had five steroidal injections, the net effect of which was to "lessen the pain for a couple of months." Plaintiff testified that he could sit for 15-20 minutes, stand for 15-20 minutes and walk about two blocks. He felt that the surgery helped his leg pain, but not his low back pain and that his ability to walk has regressed since the surgery. He stated that he could walk a mile per day a couple of months after surgery, but can't walk more than 3 blocks now.

Plaintiff testified that he can drive an automobile for one hour, wash dishes for 5-10 minutes and occasionally shop. He related that his conversation with Dr. Rohmiller has led him to believe that fusion surgery at three levels was inevitable, but that it should not occur until Plaintiff either couldn't tolerate the pain or he lost mobility. The leg pain is located primarily in the calves. (Tr. 242-257).

## THE MEDICAL RECORD

Records from TriHealth Occupational Medicine beginning in October, 2003, indicate that Plaintiff was injured on September 24, 2003 and was put on light duty after sustaining a

2

lumbosacral sprain/strain. Plaintiff reported that the pain caused by the injury was getting worse. Initially, he was restricted from lifting, pushing or pulling more than 20 lbs., from climbing, stooping, bending, crouching, twisting or squatting. Prescription medication (Percocet, Celebrex, Vicodin, Skelaxin and Dilantin) was prescribed by Perry Meadows, M.D. along with physical therapy and exercise. The diagnosis was "lumbosacral strain - spasm." (Tr. 98-119).

An MRI of the lumbar spine in October, 2003 showed "normal alignment of vertebral bodies, disc desiccation at L3-4, mild annular bulges without evidence of central spinal stenosis or nerve root impingement at L2-3 and L3-4 and a large, diffuse disc protrusion at L4-5. A mild degree of acquired central spinal stenosis is present. Minimal compression of the L5 nerve root is noted. Moderate narrowing of the neural foramina is seen bilaterally, secondary to the diffuse disc protrusion, facet and ligamentous hypertrophy." (Tr. 119). X-rays, taken in late September, 2003, showed "mild degenerative changes of the posterior facet joints and minimal spurring anteriorly at the L5-, L4 and L3. No acute pathology is seen." (Tr. 121).

Jesse Eisler, M.D., a Wellington orthopaedic surgeon, reported in April, 2004 that Plaintiff continued to have pain in his low back and left leg as well as decreasing strength in his left arm. He exhibited positive straight leg raising and decreased strength in the L5-S1 distribution. Fusion surgery was discussed and refused by Plaintiff, who preferred decompression surgery. (Tr, Pg. 123). Plaintiff was advised that he must stop smoking before surgery could be performed. (Tr. 124). In October, 2003, Dr. Eisler indicated that Plaintiff had obtained no relief from conservative treatment and that epidural injections should be the next treatment to attempt. (Tr. 127).

Dr. McLaughlin, also a Wellington orthopaedic surgeon, performed a "left L5-S1 transforaminal epidural steroid injection in February, 2004. (Tr. 128-129). Another was done in January, 2004. Dr. McLaughlin's diagnosis was "left L4-5 disc protrusion with left lumbar radiculopathy." (Tr. 130-132).

Surgery, a "left sided discectomy and laminectomy" was performed by Dr. Eisler at Christ Hospital in May, 2004. (Tr. 136-137). An MRI of the lumbar spine was done in October, 2004 by Stephen Pomeranz, M.D. The MRI showed "tumefactive granulation tissue traps the promimal L-5 root sleeve on the left at the L4-L5 level." (Tr. 140). Dr. McLaughlin reported that

3

the surgery did not relieve Plaintiff's pain as he was still suffering in June and July, 2005. (Tr. 142-144).

In May, 2005, Dr. McLaughlin reported that "Mr. Schweikart's L4-5 disc has been irrevocably damaged and altered with the work injury with disc material surgically removed. This has left a degenerative L4-L5 disc which provokes and accelerates arthropathy. Mr. Schweikart's ongoing low back difficulty is clearly due to residuals from his work injury." (Tr. 145).

Plaintiff was examined in May, 2005 by Jennifer Wischer Bailey, M.D. Plaintiff reported to Dr. Bailey that he suffered from a "sharp radiating pain radiating from his low back to his mid-back and neck." He said steroid injections failed to relieve the pain and so did surgery in May, 2004. Plaintiff reported numbness and weakness in the feet, but is stable and doesn't use a heating pad, bedboard or any form of lumbosacral or ambulatory support. He walked with a normal gait and had normal reflexes, but had "slight difficulty forward bending at the waist" and "4/5 strength in his lower extremities." There was no evidence of focal radiculopathy or muscle atrophy. Dr. Bailey concluded that Plaintiff had the capacity to do "a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." Plaintiff demonstrated no difficulty reaching, grasping and handling objects. (Tr. 146-149).

A Physical Functional Capacity Assessment was done by Jerry McCloud, M.D., in August, 2005. Dr. McCloud opined that Plaintiff could occasionally lift 20 lbs., frequently lift 10 lbs., and both sit and stand for 6 hours in a workday. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl, but should never climb ladders, ropes or scaffolds. (Tr. 154-161). His seizure disorder, recognized by both Drs. Bailey and McCloud, and for which Plaintiff takes Dilantin, was well-controlled.

Office notes from Dr. McLaughlin at Wellington from September, 2005 to April, 2007 show that the Lidoderm patches were effective for a few days, then stopped working and that a TENS unit was ineffective. Dr. Rohmiller did not recommend further surgery. Oxycontin and Oxycodone were prescribed. Plaintiff was encouraged to exercise. A third epidural injection was recommended In September, 2006, Dr. McLaughlin expressed his opinion that "He does

4

remain disabled from his usual work activities." In fairness, Dr. McLaughlin indicated on multiple occasions that "Plaintiff remains disabled," without limiting his opinion to usual work activities or further explaining himself. (Tr. 163-183).

Nerve conduction studies in March, 2006 indicated no evidence of radiculopathy, plexopathy or neuropathy in the left lower leg. (Tr. 184). An MRI of the lumbar spine in March, 2006 showed "L4-5 left hemilaminectomy, nominal posterior spondylotic change, mild peridiscal and left L5 perineural scar." (Tr. 185-186).

A discogram, administered in July, 2007, disclosed "diffuse disc degeneration and left posterior annular tear at L4-5, no evidence of significant disc degeneration or posterior displacement at L3-4 or L5-S1, facet arthropathy, most notable at L4-5 and bilateral sacroiliac arthropathy, right greater than left." (Tr. 189).

Records from Dr., Rohmiller's office indicate that Plaintiff saw Dr. Rohmiller in December, 2005 and three times thereafter, with the last visit occurring in March, 2007. The history Plaintiff gave to Dr. Rohmiller indicated that he was injured while lifting a heavy object. After conservative treatment failed, Plaintiff underwent a laminectomy with decompression at L4-5 and has had back pain, but not persistent left lower leg radiculopathy. He was taking Oxycontin, Oxycodone, Flexeril and Dilantin (for an unrelated seizure disorder). X-rays showed "no obvious spinal instability." Sensation was normal; strength in the lower extremities was nearly normal. Straight leg raising was negative. The postoperative MRI scan showed "some granulation tissue around the L5 nerve root, degenerative disc disease with dessication and slight loss of disc height at L4-5." Dr. Rohmiller reported to Dr. McLaughlin that the treatment plan would consist of physical therapy and/or epidural injections. In March, 2007, Dr. Rohmiller reported that Plaintiff, after doing physical therapy and having the injections, "seems to be doing well" and "can live with his back pain." There was no plan for future surgery. (Tr. 192-196).

In September, 2007, Dr. Rohmiller reported that Plaintiff continued to have significant back pain and that they discussed fusion surgery if Plaintiff was to stop smoking, be weaned from narcotic medications and attend a spinal fusion class. (Tr. 198).

5

## THE MEDICAL EXPERT

Arthur Lorber, M.D. is a board-certified orthopaedic surgeon, based in Indianapolis, Indiana. Dr. Lorber reviewed Plaintiff's medical record at the request of the ALJ. Dr. Lorber's opinion was that Plaintiff met Listing 1.04(A) for the period from September 24, 2003, the date of the injury to "a couple of months" past the date of surgery in May, 2004, a period of less than 12 months. Dr. Lorber's opinion was that Plaintiff did not meet or equal the Listing after that time. Dr. Lorber agreed with Dr. McCloud's analysis and opined that Plaintiff could perform the requirements of light work without restrictions. Significant to Dr. Lorber was the fact that clinical examinations conducted after surgery did not reveal any evidence of focal neurologic deficit and that X-rays showed no evidence of instability. Dr. Lorber's opinion was that Plaintiff's use of higher doses of pain medications was an indication that he was addicted, not that he needed these medications for pain relief. (Tr. 218-224).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ asked the VE to assume Plaintiff could lift and carry 20 lbs., occasionally and 10 lbs. frequently, stand/walk for 6 hours in a workday and sit for 6 hours. Plaintiff could occasionally climb stairs/ramps, stoop, balance, crouch, crawl and kneel, but should avoid climbing scaffolds, ladders or ropes. Plaintiff should avoid unprotected heights and unguarded moving machinery. The VE responded that Plaintiff could perform one category of his past relevant work as a fork lift operator amd also a representative number of jobs as an assembler and hand packer.

The second hypothetical asked the VE to assume that Plaintiff could perform all the functions of the first, but the lifting restriction was changed to 10 lbs. occasionally and 5 lbs. frequently and the stand/walk restriction was reduced to 2 hours per workday. The VE responded that there would still be a representative number of jobs available as a machine tender, hand or bench assembler and hand packer.

The third hypothetical was based on the assumption that Plaintiff's description of his pain

6

levels and the need to take breaks and be absent from work was accurate. The VE responded that Plaintiff could not perform work consistently in a competitive work environment.

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff has impairments described as lumbar disc disease and a seizure disorder, that both are considered severe, but neither met or equalled any Listing. The ALJ further found Plaintiff had the residual functional capacity to perform light work, to lift 20 lbs. occasionally and 10 lbs. frequently, stand and walk as well as sit for 6 hours, respectively, in a workday. The Plaintiff could occasionally kneel, balance, stoop, crouch, crawl and climb ramps and stairs, but should not climb ladders, scaffolds or ropes, work around unprotected moving machinery or unprotected heights. The ALJ found that given Plaintiff's restrictions, he could perform a representative number of jobs at the light and sedentary exertional levels.

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical

7

or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321 (6th Cir. 1978); *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *see Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of

disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his

9

hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for

meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). A physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). While the Commissioner may have expertise in some matters, this expertise cannot supplant the medical expert. *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir. 1963); *Lachey v. Secretary of H.H.S.,* 508 F. Supp. 726, 730 (S.D. Ohio 1981).

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

Plaintiff's first Statement of Error is that the ALJ afforded too much weight to the opinion of the ME, Dr. Lorber at the expense of treating physician, Dr. McLaughlin. Our reading of Dr. McLaughlin's reports does not support Plaintiff's theory that he believed Plaintiff to be disabled within the meaning of Social Security law. At the time Plaintiff sustained the injury to his back, he was building pallets, meaning lifting product and placing it on pallets for shipping. (See Tr. 73). Presumably, "product" means Coca-Cola bottles or cans because Plaintiff was

12

working for Coca-Cola. Plaintiff said that the heaviest weight he lifted on the job was 50 lbs. (Tr. 73). Dr. McLaughlin reported in May, 2005 that Plaintiff's L4-5 disc had been "irrevocably damaged. and altered with the work injury with disc material surgically removed." It is not clear whether it was the injury, the surgery or both, which left the L4-5 disc "irrevocably damaged," but it is clear that the post-surgical situation, approximately one year after the discectomy and laminectomy was performed, that Plaintiff had a "degenerative L4-5 disc which provokes and accelerates arthropathy." Dr. McLaughlin's expressed his opinion that the cause of Plaintiff's injury was the work-related lifting which occurred on September 24, 2003 and expressed disapproval of the opinion of a Dr. Mankowski, who apparently disagreed. Dr. McLaughlin was consulted initially to link the injury with the workplace and in that context, expressed his opinion that Plaintiff could not return to "his usual work activities," in other words to a job that apparently required the frequent lifting of 50 lbs., a conclusion supported by the ALJ's opinion.

Dr. McLaughlin never performed an analysis of Plaintiff's residual functional capacity nor was he asked to give his opinion on that subject. Dr. Lorber, an experienced orthopaedic surgeon, as is Dr, McLaughlin, also supported the view that Plaintiff should never attempt to lift 50 lbs., but Dr. Lorber was more specific in expressing his view that Plaintiff had the residual functional capacity to lift 20 lbs. on occasion and 10 lbs. frequently. Dr. Lorber's view finds support, not only in the opinion of Dr. McCloud, but in the clinical findings of Dr. Bailey.

We do not take Dr. Lorber's opinion that Plaintiff is addicted to pain medication as a having a negative affect on Plaintiff's credibility. What we take it to mean is that Plaintiff has a need for increasing amounts of pain medication, for which there is no objective orthopaedic reason, thus the rationale that pain medication has become an addiction.

Since Dr. Lorber's opinion is consistent with the opinions of Drs. McCloud and Bailey and also with the clinical findings: minimal compression of the L5 nerve root, normal gait and reflexes, no focal radiculopathy, muscle atrophy or spinal instability, we find that the ALJ was well within the margin of error to accept the opinion of Dr. Lorber.

The second Statement of Error faults the ALJ for being unreasonable in evaluating Plaintiff's subjective reports of pain. This argument seems very dependent upon Plaintiff's assumption that Dr. Rohmiller was recommending fusion surgery after the results of the

13

discogram were analyzed. We do not read Dr. Rohmiller's comments to be recommending fusion surgery. What Dr. Rohmiller actually said was that he would not perform fusion surgery until three things occurred: (1) Plaintiff ceased smoking, (2) Plaintiff was weaned from narcotic medication and (3) Plaintiff attended a class describing fusion surgery. It may have been that Dr. Rohmiller was using the promise of further surgery as a means to accomplish two of the other three objectives, referred to as conditions. When all the conditions were met, Dr. Rohmiller said he would discuss Plaintiff's options with him. Most significantly, what Dr. Rohmiller said was that the results of Plaintiff's previous physical examination was unchanged since July, 2006 when Dr. Rohmiller noted that Plaintiff's lower leg strength was near normal, sensation was grossly intact and straight leg raising was negative.

There is no doubt that there is a physical basis for Plaintiff's pain and that he has taken pain medication, endured physical therapy and epidural injections. On the other hand, there has been little, if any, treatment for more than 1 year after back surgery. There is a difference between a person who needs pain medication to relieve pain and one who simply need pain medication. When the objective findings do not correlate with the need for increasing amounts of pain medication, one suspects a beginning addiction. Dr. Lorber so concluded and the ALJ's reliance upon this and the objective medical findings to assess Plaintiff's level of pain was not erroneous.

The last Statement of Error questions the hypothetical question and thus the residual functional capacity assessment of the ALJ. The assessment simply followed the views expressed by both Dr. McCloud and Dr. Lorber. Plaintiff complains that the hypothetical did not include a provision for days missed from work because of medical procedures and doctor visits due to fusion surgery. Again, we do not read Dr. Rohmiller's statements to indicate that fusion surgery was necessarily indicated. What we read him to say is that fusion surgery was an option that would be discussed following Plaintiff's completion of three conditions, none of which were satisfied. Accordingly, the failure or refusal to include a provision for days missed from work under this hypothetical situation was not error.

After conducting a thorough review of the medical record in this case, we conclude that the ALJ's decision was supported by substantial evidence and contained no error prejudicial to

14

Plaintiff.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be AFFIRMED and this case be dismissed from the docket of the this Court.

Date: 9/17/10

Timothy S. Hogan
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).