UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT L. SCHWEIKART,

        Plaintiff

    v.                      Case No. 1:09-cv-13-HJW

COMMISSIONER OF SOCIAL SECURITY,

        Defendant

### ORDER

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 14) and plaintiff's objections (doc. no. 15). Plaintiff, a Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") claimant, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final decision denying plaintiff's application for benefits. The Magistrate Judge recommended that the Commissioner's decision is supported by substantial evidence and should be affirmed. Having reviewed the record, including plaintiff's objections, this Court agrees with the Magistrate Judge and will affirm the Commissioner's final decision for the following reasons:

### I. Background

Plaintiff was born in 1964, has a high school education, and has relevant work experience as a sandblaster, forklift operator, and pallet builder (TR 21, 77, 80, 119, 225-226).[1] While working for Coca-Cola in September of 2003, plaintiff lifted a case

---

[1] This work was at least "medium" exertional level, which involves lifting up to fifty pounds. 20 C.F.R. § 404.1567(c).

of bottles and strained his back (TR 17, 111-112). He was diagnosed with lumbar strain, given pain medication, and cleared to work the next shift on light duty, i.e. with some restrictions, such as no lifting over 15 pounds (TR 111, 113). An MRI on October 2003, reflected normal vertebral alignment with mild degenerative changes (TR 119-121). On October 27, 2003, plaintiff indicated that he been on "light duty" since straining his back but that the pain had gotten worse within the last 24-48 hours (TR 98).

On May 24, 2004, plaintiff underwent an L4-5 discectomy and laminectomy (TR 17, 137). After recuperating from the surgery, he indicated that he could walk up to a mile (TR 249). He indicated that pain in his lower back on occasion extended down to his legs, but was "[n]ot as bad" after surgery (TR 248). However, plaintiff indicated that his back pain later returned and that, if he walked three city blocks, "that would be pushing it" (TR 249). On October 14, 2004, a post-surgical lumbar MRI revealed no signs of discitis or osteomyelitis and showed that the neural formina were intact.

In 2005, plaintiff was given several epidural steroid injections by Dr. Matthew McLaughlin, M.D., and plaintiff indicated the injections helped "for a couple of months at a time" (TR 17, 247). Plaintiff received physical therapy in 2005 (TR 17, 98-134), although plaintiff contended it "made things worse" (TR 243). Plaintiff filed applications for DIB and SSI in February of 2005.

Plaintiff continued to see Dr. McLaughlin approximately once a month from June 2005 through April 2007. Dr. Laughlin referred plaintiff to a spinal specialist,

Dr. Michael Rohmiller, M.D., who saw plaintiff on four occasions (TR 192-98). Dr. Rohmiller examined plaintiff in December 2005, and noted that plaintiff was able to walk on his heels and toes, that his sensation was essentially intact, and that he was negative for straight leg raising,[2] both seated and supine (TR 195). In March 2006, Dr. Rohmiller reviewed a recent MRI of plaintiff's back and observed no significant suppressive abnormalities from an L-5 disc bulge (TR 194). He recommended physical therapy and epidural steroid injections (TR 193). In March 2007, Dr. Rohmiller wrote that plaintiff's physical condition was "unchanged from that of my note of July 12, 2006" and that plaintiff was "doing well" (TR 192).

In March of 2007, Dr. McLaughlin similarly noted negative straight leg raising and improvement following epidural injections, without ongoing radicular findings (TR 164, 176). In April 2007, he noted that plaintiff's condition was unchanged and stable (TR 163). A discogram taken in July 2007 showed diffuse disc degeneration, a left posterior annular tear at L4-5, facet arthropathy at L4-5, and bilateral sacroiliac arthropathy, with the right side greater than the left (TR 189).[3] Several months later in September 2007, Dr. Rohmiller examined plaintiff and indicated that his condition remained unchanged from July 2006 (TR 198).

In addition to various pain medications, including Oxycontin, plaintiff takes

---

[2] The "straight-leg raise" test is used to check for radiculopathy, which is a medical term that describes harm to spinal nerves. See, e.g., Massey v. Comm'r of Social Sec., Slip Copy, 2011 WL 383254 (6th Cir. (Ky.)) (defining term).

[3] The online medical dictionary "MedicineNet.com" indicates that arthropathy is the general medical term for "joint disease."

the medication "Dilantin" for a seizure disorder that is well-controlled. The ALJ noted that plaintiff indicated that he had not had a seizure for several years (TR 17, 146). The ALJ noted that plaintiff's "pain medications have remained stable except his OxyContin was increased to three times daily on March 16, 2006" (TR 21). Although Dr. Laughlin had found that plaintiff's condition was unchanged, he increased plaintiff's OxyContin dosage due to "insufficient pain control" reported by plaintiff after taking OxyContin for over a year (TR 176).[4]

## II. Procedural History

Plaintiff filed applications for DIB and SSI in February of 2005, alleging disability due to low back pain as of September 24, 2003. The applications were denied initially and upon reconsideration. An Administrative Law Judge ("ALJ") held a hearing in August 2007, after which plaintiff submitted additional evidence. In November 2007, the ALJ held a supplemental hearing, at which an impartial medical expert, Dr. Arthur Lorber, M.D. and an impartial vocational expert, William T. Cody, testified. At both hearings, plaintiff testified and was represented by counsel. The evidence included the May 2005 evaluation of plaintiff by consulting examiner Dr. Jennifer Bailey, M.D., and the RFC assessment of plaintiff's abilities by state agency physician Dr. Jerry McCloud, M.D. The latter RFC assessment indicated plaintiff retained the ability to do light work.[5] Plaintiff's treating physician

---

[4]The online medical dictionary "MedicineNet.com" indicates that OxyContin (a brand name for oxycodone) is a highly addicting narcotic pain-reliever.

[5]Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . a good deal of walking

**(Dr. Laughlin) did not submit an RFC assessment.**

**In November 2008, the ALJ issued a decision finding that plaintiff was not disabled for purposes of the Social Security regulations and was not entitled to benefits. Specifically, the ALJ found that although plaintiff had severe impairments due to lumbar disc disease and a seizure disorder, plaintiff had the residual functional capacity ("RFC") to perform light work within his restrictions. After eliciting testimony from the VE, the ALJ found that, considering the plaintiff's age, education, work experience, and RFC, plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy (TR 22).[6]  Plaintiff timely sought judicial review by this Court in January 2009.**

**III.  Issues Presented**

**Plaintiff makes three objections to the Report and Recommendation, namely that: 1) the Magistrate Judge and ALJ erred regarding the weight given to the non-examining medical expert (doc. no. 15 at 2-4);   2) the Magistrate Judge and ALJ erred in discounting the plaintiff's credibility, pain, and subjective complaints  (<u>Id</u>. at 4-6); and 3) the Magistrate Judge and ALJ erred because the ALJ allegedly posed incomplete hypothetical questions to the VE (<u>Id</u>. at 7).[7]  Although plaintiff contends**

---

or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[6]Although the ALJ's decision has inconsistent page numbering, i.e. 5 of 10, 6 of 11, 8 of 11, and 9 of 10, counsel for the Commissioner confirmed to chamber staff that the entire decision was in the record.

[7]The Commissioner filed no response to the plaintiff's objections, an unfortunate practice that is not helpful to the Court.

that the Magistrate Judge "erred," the ALJ (not the Magistrate Judge) is the fact finder. Plaintiff's objections will be addressed accordingly.

IV.  Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  42 U.S.C. § 405(g);  Richardson v. Perales, 402 U.S. 389, 401 (1971);  White v. Comm'r of Soc. Sec., 572 F.3d 272, 281 (6th Cir. 2009).

The ALJ's decision must be affirmed if the Court finds that the decision is supported by substantial evidence in the record as a whole. Kirk v. Sec. of HHS, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson, 402 U.S. at 401). The ALJ's decision may not be reversed merely because substantial evidence would also support a different decision. Casey v. Sec. of HHS, 987 F.2d 1230, 1233 (6th Cir. 1993).

V.  Analysis

A.  Whether the ALJ Erred Regarding the Weight Given to the Non-Examining Medical Expert

At the hearing, the ALJ sought the testimony of an impartial medical expert, Dr. Arthur Lorber, M.D., who is a board-certified orthopedic surgeon.  Although plaintiff complains that the ALJ erred in failing to note that Dr. Lorber's testimony (TR 218-224) was purportedly "conclusory," plaintiff does not explain why this

testimony was conclusory. The transcript shows that Dr. Lorber thoroughly stated the objective medical findings upon which he based his testimony. This aspect of plaintiff's objection is not specific enough to address further.

Plaintiff also complains that Dr. Lorber "based his testimony solely on the objective medical findings in the file" and did not consider plaintiff's testimony at the hearing (doc. no. 15 at 2). Plaintiff misstates the role of the medical expert. Pursuant to 20 C.F.R. § 404.1529(b), the ALJ may engage a medical expert who "participates in determining whether your medically determinable impairment(s) could reasonably be expected to produce your alleged symptoms." The Social Security guidelines explain that "the primary reason an ALJ may obtain [medical expert] opinion is to gain information which will help him or her evaluate the medical evidence in a case" (TR 211, Hallex I-2-5-32 "Medical Experts").

However, it is for the ALJ as the fact-finder "to pass upon the credibility of the witnesses and weigh and evaluate their testimony." Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir. 1972); Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383, 386-87 (6th Cir. 1987) ("The notion that special deference is owed to a credibility finding by a trier of fact is deeply imbedded in our law"); Walters v. Commissioner of Social Services, 127 F.3d 525, 528 (6th Cir. 1997). Plaintiff's assertion that the ALJ will "not reject the subjective testimony of a claimant based on a lack of objective medical abnormalities alone" does not follow from his preceding argument. In other words, his interpretation of the regulation is based on a faulty premise regarding the medical expert (doc. no. 15 at 2-3). In any event, the

ALJ's decision plainly reflects that he considered the record as a whole (not just Dr. Lorber's testimony) in considering the plaintiff's credibility regarding subjective complaints of pain and any resulting functional limitations.

As part of this objection, plaintiff argues that the ALJ did not give controlling weight to a notation in Dr. Laughlin's treatment records that plaintiff "remained disabled" (TR 143). Plaintiff makes much of this notation and characterizes it as the "opinion of a treating physician," but ignores the context where it appears. It is notation in a treatment record, not an RFC assessment. The ALJ properly discounted this conclusory notation and gave good reasons for doing so.

In the first place, the determination of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(e) and § 416.1927(e). "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); see also, <u>Warner v. Commissioner of Social Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004). An ALJ may reject the opinion of a treating physician when it merely states a conclusion. <u>Cutlip v. HHS</u>, 25 F.3d 284, 286-87 (6th Cir. 1994) (affirming, and observing that ALJ properly found that treating physician's notation that plaintiff was "still disabled" was not controlling).

Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians." <u>Rogers v. Comm'r of Soc. Sec.</u>, 486 F.3d 234, 242 (6th Cir. 2007). However, the opinion of a treating physician is not given controlling weight merely because it is from a treating

physician. To be given controlling weight, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not be "inconsistent . . . with other substantial evidence in the case record." Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009).

The ALJ adequately explained that Dr. McLaughlin's use of the term "disabled" was "too vague in this context" because Dr. McLaughlin was likely referring to plaintiff's past "medium" work or to a permanent partial injury for purposes of workers compensation (TR 19). As the ALJ explained, Dr. Laughlin had recommended that plaintiff's worker's compensation claim be allowed, and plaintiff had acknowledged that he had received workers compensation for his back injury (TR 15, 17). In fact, in the same paragraph as his "disabled" notation, Dr. Laughlin indicated that "hopefully we will have some movement from worker's compensation"(TR 143).

The ALJ's finding that the notation was vague and unexplained was a good reason for not giving it controlling weight. The Magistrate Judge aptly pointed out that Dr. Laughlin had elsewhere indicated his opinion that plaintiff was disabled from "his usual work activities," which involved regular lifting of up to 50 pounds (doc. no. 14 at 13; TR 86, 143, 170, 175). The ALJ did not err in not giving controlling weight to the notation by Dr. Laughlin. "Conclusory statements from physicians are properly discounted by ALJs." White, 572 F.3d at 285; see also, Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (observing that ALJs are "not bound by conclusory statements of doctors").

Plaintiff also urges that a few sentences in the consulting examiner's report should have outweighed the testimony of the medical expert Dr. Lorber and the complete RFC assessment of the state agency reviewing physician, Dr. McCloud (doc. no. 15 at 4). Plaintiff is essentially complaining that the ALJ did not correctly weigh all the medical opinions of record in reaching his decision. However, he ignores the ALJ's lengthy discussion of the medical evidence and explanations for the relative weight assigned the various medical opinions (TR 18-21). Although plaintiff argues that the ALJ should have weighed the evidence differently and found plaintiff disabled for purposes of the Social Security Act, an ALJ's decision may not be reversed merely because substantial evidence might support a different decision. Casey, 987 F.2d at 1233.

The ALJ discussed consulting examiner Dr. Bailey's findings at length, including the findings that plaintiff walked normally, had good muscle strength and normal reflexes, and showed no muscle atrophy or evidence of focal radiculopathy (TR 18-19). Although plaintiff contends that "diminished pinprick sensation" is a reliable indicator of "disabling pain," Dr. Bailey's report actually found only "slightly" diminished pinprick over plaintiff's toes, with no evidence of a focal neurological deficit in plaintiff's lower extremities and no instability (TR 18, 148). Plaintiff's selective reference to a few items in Dr. Bailey's report does not establish that the ALJ failed to properly weigh the medical evidence in the record as a whole. On the contrary, the Court finds that substantial evidence supports the ALJ's decision.

The ALJ discussed Dr. Lorber's testimony, including his explanation that Dr. Bailey found no evidence of a focal neurological deficit in the lower extremities (Id.). Similarly, Dr. Lorber noted that the evaluation by spinal specialist, Dr. Rohmiller, showed that plaintiff was "neurologically intact" (TR 20). Dr. Lorber indicated he agreed with the RFC assessment of the state agency medical consultant (Ex. 7F) indicating that plaintiff could do light work within his restrictions. "The ALJ had the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [plaintiff's] subjective complaints." Buxton, 246 F.3d at 773.

Although plaintiff further argues that he cannot do light or sedentary work and selectively points to several notes in the records of Dr. Bailey and Dr. Laughlin, the Court observes that neither physician submitted an RFC assessment.[8] On the other hand, state agency physician Dr. Jerry McCloud did complete an RFC assessment indicating that plaintiff could perform the requirement of light work (TR 155). Specifically, Dr. McCloud opined that plaintiff could lift, carry, push and/or pull up to twenty pounds occasionally, and up to ten pounds frequently; could stand and/or walk six hours in an eight-hour day; and could sit six hours in an eight-hour day (TR 148, 154-61). Dr. Lorber indicated he agreed with Dr. McCloud's assessment. Given the record as a whole, the ALJ's findings regarding plaintiff's RFC were supported

---

[8]The ALJ accurately observed that Dr. Bailey had indicated in her report that plaintiff was able to do a "mild to moderate" amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying of heavy objects" (TR 18, 148). This was not in the context of an RFC assessment where the terms and levels of work are carefully defined by the regulations.

by substantial evidence. Heston v. Comm'r of Soc. Sec., 245 F.3d 528 (6th Cir. 2001)("Judicial review of the Secretary's findings must be based on the record as a whole"). Plaintiff's objection is without merit.

**B. Whether the ALJ's Decision Regarding Plaintiff's Credibility, Pain, and Subjective Complaints is Supported by Substantial Evidence**

Plaintiff next disputes the ALJ's finding that plaintiff's testimony regarding his pain was less than fully credible (TR 20-21, Finding 5). In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. Walters, 127 F.3d at 531 (citing Kirk, 667 F.2d at 536). "An individual's statements as to pain or other symptoms will not alone establish that [he is] disabled." Id. (quoting 20 C.F.R. § 404.1529(a)). A claimant must establish an underlying medical condition. Then, he must show either that objective medical evidence confirms the extent of the alleged pain or that the objective medical evidence could reasonably be expected to produce the pain. Id. In evaluating claims of pain that cannot be shown through objective medical evidence, the ALJ must consider a plaintiff's statements about the "intensity, persistence, and limiting effects of [his] symptoms." 20 C.F.R. § 404.1529. The ALJ must consider the entire record, including the objective medical evidence, the individual's own statements about symptoms, evidence of physicians and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the record. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *1-2.

The ALJ noted that the objective medical evidence showed that plaintiff had made a good recovery after surgery in 2004 (TR 20). Although plaintiff disputes this

characterization, treating physicians Dr. Laughlin and Dr. Rohmiller both indicated that after recuperating from surgery, the plaintiff was able to walk without difficulty, had good strength and normal reflexes. Dr. Rohmiller, the spinal specialist, indicated that plaintiff's back showed no instability (TR 20). Moreover, the consulting examiner Dr. Bailey also found that plaintiff walked normally, had good strength, and had no neurological deficits.

Plaintiff suggests that the ALJ's finding regarding his credibility was based only on the objective medical findings of Dr. Lorber, who did not examine plaintiff. Plaintiff misconstrues the ALJ's findings. The ALJ applied the correct law, as he specifically indicated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, undersigned must make a finding on the credibility of the statements based on a consideration of the <u>entire record</u>" (TR 16) (emphasis added). The ALJ's decision reflects that he actually did this.

The ALJ discussed plaintiff's testimony and daily activities, as well as his medical history and current levels of pain medication (TR 16-17). The ALJ discussed the medical expert's testimony regarding objective medical evidence and observed the plaintiff personally at the hearing. The ALJ considered the medical records of the treating physicians and the report of the consulting examiner (TR 18). Plaintiff has not shown that the ALJ failed to consider the "entire record" in determining his credibility.

Plaintiff asserts without explanation that the scar tissue on the MRI supported

his subjective complaints of pain. While the MRI showed some granulation tissue entrapping the L5 root sleeve on the left side, the medical expert described this as "nothing more than mild perineural scarring, as one would expect after a lumbar discectomy" (TR 10, 17). The medical expert further testified that a recent study at John Hopkins University had found no correlation between such scarring and back pain, and that as plaintiff had a normal amount of scarring, he did not think it was a significant factor for plaintiff (TR 223).

Plaintiff also disputes the ALJ's suggestion, based on Dr. Lorber's testimony and other evidence of record, that plaintiff's increased dosage of OxyContin could reflect an increased tolerance for narcotic medication (TR 21). Plaintiff ignores the fact that in April 2007, Dr. McLaughlin examined him and noted that his condition was unchanged and stable (TR 163). Similarly, in September 2007, Dr. Rohmiller noted upon physical examination that plaintiff's condition was unchanged from July 2006 (TR 198). Nonetheless, plaintiff sought higher doses of narcotic medication (Oxycontin) from Dr. Laughlin, who increased plaintiff's dosage (TR 19-21, 249).

Given the evidence of record, the ALJ appropriately observed that the increased dosage of Oxycontin could reflect an increased tolerance for narcotic medication. To the extent that plaintiff argues the increased dosage was actually a measure of increased pain that would make him more credible regarding his subjective complaints, the ALJ could appropriately consider evidence that the plaintiff's increased narcotic dosage was the result an increased tolerance, particularly in view of the treating physicians' records showing that plaintiff's

condition was unchanged. Additionally, the ALJ noted that he had observed no overt pain behavior when plaintiff testified at the hearings and that plaintiff walked normally. Although plaintiff alleged pain when sitting or standing (TR 155), he acknowledged at the hearing that he could drive a vehicle for about an hour at a time (TR 250). His own physicians indicated he walked normally. The ALJ's credibility determination with respect to plaintiff's subjective complaints of pain and any resulting effect on his ability to work was supported by substantial evidence.

### C. Whether the ALJ Erred in Relying on the VE's Testimony

Finally, plaintiff generally lists his third objection as "vocational errors" (doc. no. 15 at 7). The ALJ posed three different hypothetical questions to the VE, with progressively more restrictions of the plaintiff's abilities (TR 226-228). The third question assumed that plaintiff's subjective complaints and resulting limitations were fully credible. Plaintiff contends that the ALJ should have based his decision entirely on this third hypothetical question. However, as already discussed, the ALJ did <u>not</u> find plaintiff to be fully credible regarding his subjective complaints and the degree to which his alleged pain limited his abilities (TR 20-21).

Plaintiff argues that the ALJ's hypothetical questions based on light work with various restrictions were contrary to the limitations found by Dr. Bailey. However, Dr. Bailey <u>did</u> not submit an RFC assessment. Dr. Bailey examined plaintiff and found no muscle atrophy, normal reflexes, and "no difficulty reaching, grasping, and handling objects" (TR 147-148). Dr. Bailey noted that plaintiff walked with a "normal gait" and was "comfortable in both the sitting and standing positions." Dr. Bailey

concluded that plaintiff could do a "mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects" (Id.) Plaintiff does not explain why Dr. Bailey's findings would not allow light work, particularly the reference to lifting heavy objects.

The ALJ was not required to pose hypothetical questions to the vocational expert which incorporated the degree of limitation claimed by plaintiff. It is well settled that the ALJ's hypothetical questions need only incorporate the limitations found credible by the ALJ. Casey, 987 F.2d at 1235; Jones v. Comm'r, 336 F.3d 469, 476 (6th Cir. 2003). A hypothetical question must accurately represent the claimant. Buxton, 246 F.3d at 772. However, an ALJ need not consider a VE's answer to a hypothetical that he later determines is not supported by the evidence.

Moreover, the RFC assessment by Dr. Jerry McCloud, M.D., plainly indicated plaintiff was capable of light work within his restrictions, and the medical expert Dr. Lorber indicated his agreement with such assessment (TR 154-161). The ALJ's description of plaintiff's RFC accurately reflects his abilities and is supported by substantial evidence.

## VI. Conclusion

This Court finds that the Commissioner's final decision is supported by substantial evidence in the record as a whole. The Magistrate Judge's Report and Recommendation accurately set forth the controlling principles of law and properly applied them to the particular facts of this case.

Accordingly, the Court ADOPTS the Report and Recommendation and the final

**decision of the Commissioner is AFFIRMED. This case is TERMINATED on the docket of this Court.**

      **IT IS SO ORDERED.**

                                              **s/Herman J. Weber**
                                  **Herman J. Weber, Senior Judge**
                                  **United States District Court**